# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUZETTE ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 5677 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| CITY OF EVANSTON, a municipal ) | |
| corporation, WALTER BOBKIEWICZ, ) | |
| GRANT FARRAR, and JENNIFER LIN, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Suzette Robinson, the former Director of Public Works for the City of Evanston (the "City"), claims that Defendant Walter Bobkiewicz, the City Manager for the City, discriminated against her on the basis of her race and that Bobkiewicz and Defendants Jennifer Lin and Grant Farrar retaliated against her under 42 U.S.C. § 1983[1] in violation of 42 U.S.C. § 1981 and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/6-101, for filing complaints about racial discrimination. Bobkiewicz moves to dismiss [17] Robinson's suit, as do Farrar and Lin [21]. Because Robinson has failed to allege sufficient facts to state a claim for retaliation against Lin and Farrar the Court grants their motion to dismiss Count V. The Court also grants their motion to dismiss Count X because the IHRA does not provide for individual liability in retaliation cases. The Court denies Bobkiewicz's motion to dismiss Counts III and IV because he has failed to show that his decision to terminate Robinson before the City Council

---

[1] Robinson brings her federal discrimination and retaliation claims pursuant to § 1983 because "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981" by state actors. *De v. City of Chicago*, 912 F. Supp. 2d 709, 730 (N.D. Ill. 2012) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)).

eliminated her position was legislative in nature. However, because the IHRA does not allow for individual liability for retaliation claims, the Court dismisses Count IX.

## BACKGROUND[2]

Robinson, an African American woman, was the Director of Public Works for the City from March 2010 until August 21, 2015. While in this position, she reported directly to Bobkiewicz, the City Manager. In her role as Director of Public Works, Robinson oversaw five divisions, which employed over 100 people. In May 2014, Robinson completed a performance evaluation of Bobkiewicz, and she noted her belief that Bobkiewicz treats members of the City's African America community and its African American employees poorly. Bobkiewicz learned of Robinson's comments in August 2014.

On November 7, 2014, Bobkiewicz reprimanded Robinson publicly in front of her assistant directors and other employees of the Public Works Department. Bobkiewicz also falsely told at least two of Robinson's subordinates that Robinson was seeking to leave her position in order to undermine her authority. In response, Robinson filed a Healthy Work Environment Complaint ("HWE Complaint") against Bobkiewicz. Marty Lyons, Assistant City Manager, investigated the HWE Complaint and sustained three of the five complaints against Bobkiewicz. Elizabeth Tisdahl, the City's Mayor, issued a written reprimand to Bobkiewicz. After Robinson filed the HWE Complaint, Bobkiewicz reassigned some of her duties to other members of the staff.

Robinson, believing that her concerns regarding Bobkiewicz remained unresolved, sent a written demand letter to the City describing her concerns about Bobkiewicz's disparate treatment

---

[2] Unless otherwise noted, the facts in the background section are taken from Robinson's amended complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

of African American employees on March 4, 2015. Farrar, Corporation Counsel/City Attorney, responded and asked Robinson to submit a detailed settlement demand, which she did on March 30, 2015. In this demand letter Robinson stated that if her demands were not satisfied she would file a discrimination charge against the City. On April 14, 2015, Farrar responded on behalf of the City stating that the City would not resolve her demands unless she left employment with the City. He also noted in the letter that Robinson was the subject of numerous HWE Complaints herself. On April 23, 2015, Robinson, through her attorney, responded to the letter stating that she would proceed with filing her discrimination charge, and she filed a charge on April 30, 2015 with the Illinois Department of Human Rights ("IDHR"), alleging retaliation and discrimination.

On April 27, 2015, Farrar directed Lin, Human Resources Division Manager for the City, to conduct interviews with City employees to uncover unfavorable information about Robinson. Lin conducted these interviews between April 27 and May 5, 2015. Lin documented these interviews in a memorandum she wrote to Lyons and Farrar on May 8, 2015, concluding that Robinson created an unhealthy work environment.

On May 12, 2015, Bobkiewicz announced that Lyons and another city employee, Ricky Voss, would conduct an examination of the Public Works and Utilities Departments and he expected that this examination would lead to the elimination of both departments. As part of this examination, Bobkiewicz changed Robinson's reporting structure and directed her to report directly to Lyons. Lyons removed Robinson's decision-making authority and ordered the employees who directly reported to Robinson to instead report to him.

On August 21, 2015, Lyons informed Robinson that her employment was terminated but did not provide her a reason for the termination. The same day, Robinson received a letter from Bobkiewicz stating that the City planned to combine Public Works and Utilities into one

department named the Public Works Agency. As a result of this combination, Bobkiewicz stated that the City was eliminating Robinson's position from the City's Fiscal Year 2016 budget and terminated her employment, effective immediately.

On August 27, 2015, Lyons sent a memorandum to the City Council describing the proposed organizational changes to the Public Works and Utilities Departments. The memorandum stated that appointment of the head of the new combined agency would occur around mid-October 2015. The City Council approved the proposed reorganization on September 23, 2015.[3]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads

---

[3] The Court takes judicial notice of the role of the City Manager in the legislative process as well as the date the City Council approved the reorganization ordinance. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment. A Court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned."); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("We hold that matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice.").

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.  **Claims against Farrar and Lin**

Robinson alleges that Farrar and Lin retaliated against her in violation of the IHRA and § 1981 when they fabricated HWE Complaints against Robinson. Farrar and Lin move to dismiss these claims, arguing that the IHRA does not provide for jurisdiction against individual employees in the context of retaliation and that Robinson has failed to adequately allege a claim against them. For the reasons discussed below, the Court grants Farrar and Lin's motion on both claims.

   A.  **Violation of § 1981 (Count V)**

Robinson alleges that Farrar and Lin retaliated against her in violation of § 1981 when they fabricated HWE Complaints in retaliation for her complaints about race discrimination at the City. To state a claim Robinson must allege that she engaged in a protected activity, suffered a materially adverse employment action at the hands of the Defendants, and that there is a causal connection between the two. *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015). Lin and Farrar contend that Robinson has failed to allege an adverse employment action or a causal link to her protected activity.

Robinson argues that the fabrication of the HWE Complaints constitutes a materially adverse action. A materially adverse action is one which might "dissuade a reasonable worker from making or supporting a charge of discrimination." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016), *cert. denied*, No. 16-442, 2016 WL 5816674 (U.S. Nov. 28, 2016) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). The

5

action does not need to be directly related to the plaintiff's employment. *Id.* But a negative review or employment complaint, even when false, is not materially adverse without some negative consequence resulting from the complaint. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108–09 (7th Cir. 2012) (holding that because a negative review did not have any actual consequences for plaintiff it was not materially adverse); *Martinez v. Nw. Univ.*, 173 F. Supp. 3d 777, 788 (N.D. Ill. 2016) (holding that filing false accusations regarding plaintiffs behavior and making false allegations about the plaintiff's compliance with department policies were not materially adverse employment actions where there were no material consequences). Robinson does not allege any facts suggesting that the fabrication of the HWE Complaints dissuaded her or would have dissuaded a reasonable worker from making or supporting a discrimination charge. Furthermore, Robinson does not allege that the HWE Complaints played a role in her termination or any other adverse employment action she experienced. Finally, the City never made the complaints public. While Lin included some of the information she gathered during the investigation in a memo she drafted for Lyons and the City attached this memo to their response to Robinson's IDHR complaint, Robinson does not allege that it was publicly available or that it had an impact on her professional reputation.

Robinson argues that courts have found similar acts to be materially adverse actions. In support she cites *Greengrass*, where the Seventh Circuit held that identifying an employee as having filed an EEOC complaint in a publicly available SEC filing constituted a materially adverse employment action because it might be viewed negatively by future employers. 776 F.3d at 485. The crux of *Greengrass* is that the employer identified the employee publicly, but here, Robinson does not allege that any of the HWE Complaints were public. *Cf. id.* Therefore, *Greengrass* is inapposite.

Robinson also argues that a "'defendant directly participated in retaliation' by seeking to get a witness to testify in a disciplinary hearing against the plaintiff even though no disciplinary action was pending against the plaintiff at the time." Doc. 31 at 9 (quoting *Harder v. Vill. of Forest Park*, 466 F. Supp. 2d 1000, 1008 (N.D. Ill. 2006)). But in *Harder* the court was determining whether the defendant participated in the retaliation not whether the investigation itself constituted retaliation. *Harder*, 466 F. Supp. 2d at 1007–08. In this case, Robinson is alleging that the investigation itself constitutes a materially adverse action. This distinction is critical, and *Harder* does not support Robinson's claim. Based on Robinson allegations, the fabrication of HWE Complaints standing alone does not constitute a materially adverse action.

Lin and Farrar argue that even if Robinson adequately alleged a materially adverse employment action, she has failed to allege a causal link between her alleged protected activity and the alleged adverse employment action and that she "plead [sic] herself out of court on this claim by alleging . . . that Defendants fabricated the internal complaints . . . 3 days BEFORE she engaged in protected activity by filing her charge with the IHDR." Doc. 21-1 at 8 (emphasis in original). Robinson counters that Lin and Farrar ignore the fact that her April 30 IHDR complaint was not the first time she engaged in protected activity. Robinson also complained of racial discrimination in her March 4, 2015 demand letter, her March 30, 2015 written settlement demand, and her April 23, 2015 letter in which she stated that she would file the IHDR complaint if the City did not adequately address her concerns about racial discrimination. Each of these actions constitutes protected activity and each pre-dates Lin and Farrar's investigation. *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013) (protected activity includes "opposing an unlawful employment practice"). And while suspicious timing alone does not always satisfy the causation element of a § 1981 claim, retaliatory conduct that "comes 'on the

7

heels' of the protective activity" is often sufficient. *Hosick v. Chicago State Univ. Bd. of Trs.*, 924 F. Supp. 2d 956, 976 (N.D. Ill. 2013). Here, the alleged retaliatory activity occurred within three days of Robinson notifying Farrar that she intended to file her IHDR complaint. Under the circumstances, this is sufficient to allege a causal connection.

Robinson pleads sufficient facts to establish that Lin and Farrar conducted the investigation in retaliation for her filing the IHDR Complaint, but she has not adequately connected the investigation to any materially adverse employment action and the Court dismisses Count V. Robinson may be able to remedy this issue upon repleading if she is able to allege that the HWE Complaints caused some tangible adverse employment consequence. If not, she will not be able to state a retaliation claim with respect to Lin and Farrar.

**B.     IHRA Claim (Count X)**

Robinson also alleges that the fabricated HWE Complaints violate the anti-retaliation provision of the IHRA. Lin and Farrar move to dismiss this claim, arguing that the IHRA does not provide for liability against individual employees for retaliation.

The Illinois Supreme Court has not ruled on whether the IHRA provides for liability against individual employees for retaliation. In the absence of such guidance from a state supreme court, federal courts give "great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)).

8

On this issue, the Illinois state appellate courts have consistently held that the IHRA does not provide for liability against individual employees for retaliation. *See Anderson v. Modern Metal Prod.*, 711 N.E.2d 464, 471, 305 Ill. App. 3d 91, 238 Ill. Dec. 361 (1999) (holding that in a claim for retaliation, "where the action is taken by a company official in the name of the employer, the charge must be against the employer and not against the official personally."); *Watkins v. Office of State Appellate Def.*, 976 N.E.2d 387, 400, 2012 IL App (1st) 111756, 364 Ill. Dec. 109 (2012). The sole exception being *Anderson v. Pistner*, 148 Ill. App. 3d 616, 620, 499 N.E. 2d 566, 102 Ill. Dec. 9 (1986), where the court stated in dicta that a plaintiff could have brought a claim for retaliation against the individual defendants for retaliation under the IHRA, but chose not to. *Id.*

The Seventh Circuit has only addressed this question in one unpublished and non-precedential case, *Nieman v. Hale*, 541 F. App'x 693, 695 (7th Cir. 2013), in which the Court reached a different conclusion than the Illinois appellate courts, holding that a party may bring a claim for retaliation under the IHRA against an individual employee. *Id.* at 698. But, because this case is non-precedential, this Court is not bound to follow it and elects instead to follow the rule uniformly followed in Illinois appellate courts that the IHRA does not allow for individual liability in retaliation cases. Therefore, the Court dismisses Robinson's IHRA claim against Farrar and Lin.

## II. Claims Against Bobkiewicz

Robinson alleges that Bobkiewicz terminated her employment with the City because of her race and in retaliation for her filing of complaints of race discrimination in violation of § 1981. Robinson also brings a claim for retaliation against Bobkiewicz in violation of the IHRA.

9

## A. Federal Race Discrimination and Retaliations Claims (Counts III and IV)

Bobkiewicz argues that Robinson's federal claims must fail because the decision to terminate her employment was legislative, and therefore he is immune from suit under § 1983. Legislators are immune from suit under § 1983 for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998). This immunity extends to local officials, including village managers, when they are performing legislative functions. *See id.* at 55; *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 883 (N.D. Ill. 2014) (holding legislative immunity applied to village manager for his role in the passage of an ordinance eliminating plaintiff's position). To determine whether or not the immunity applies, the Court must examine whether the actions that Bobkiewicz took were "integral steps in the legislative process." *Bogan*, 523 U.S. at 55. Introducing, voting for, and signing an ordinance constitute legislative activity. *Id.* at 46. So does drafting ordinances. *Weiler*, 86 F. Supp. 3d at 881.

On May 12, 2015, Bobkiewicz announced an examination of the Public Works Department, which was Robinson's department, as well as the Utilities Department. Bobkiewicz stated that the examination would likely lead to the elimination of these departments. On August 21, 2015, Bobkiewicz sent Robinson a letter advising her that the City planned to combine Public Works and Utilities into one department called the Public Works Agency and that the upcoming year's budget would not contain her position. Bobkiewicz's letter informed Robinson that her employment was terminated, effective immediately.

On August 27, 2015, Lyons sent a memorandum to the City Council describing the proposed organizational changes to the Public Works and Utilities Departments. The memorandum stated that appointment of the head of the new combined agency would occur

around mid-October 2015. The City Council approved the proposed reorganization on September 23, 2015.

Bobkiewicz contends that his decision to terminate Robinson was an integral part of the legislative process and therefore protected by legislative immunity. It is well established that legislative immunity insulates officials from liability for termination of employment after the elimination of a position. *See, e.g., Bogan*, 523 U.S. at 55–56 (mayor immune from suit for termination of employee following the elimination of that employee's position). But, the only case the Court has located that addresses termination before the actual legislative elimination of an employee's position found that such a termination is not protected by legislative immunity. *Jessen v. Town of Eastchester*, 114 F.3d 7, 8 (2d Cir. 1997) (legislative immunity does not protect defendant who fired plaintiff four days before the city council voted to eliminate his position). Furthermore, Robinson's termination does not fall into any category previously recognized as integral to the legislative process. Her pre-emptive termination is not relevant to the investigation, drafting, proposing, voting, signing, or any other aspect of the passage of the proposed ordinance. Finally, Bobkiewicz concedes in his motion, although it was his duty to initiate, review and propose reorganizations to the City Council, the proposal was still subject to the City Council's review and approval. The elimination of Robinson's position was not a *fait accompli* at the time of termination, and the City Council could have rejected his reorganization proposal and maintained the existence of her position. If pre-elimination terminations are considered legislative in nature even when there is ultimately no elimination, this would grant city managers a free hand to terminate anyone and then insulate themselves from liability by simply *proposing* the elimination of that person's position. Therefore, legislative immunity does

11

not protect Bobkiewicz form liability for Robinson's termination prior to the passage of the ordinance.

### B. IHRA Claim (Count IX)

Bobkiewicz argues that the Court should dismiss Robinson's IHRA retaliation claim because the IHRA does not provide for individual liability for retaliation claims and because he is immune from suit under the TIA. For the reasons stated above the IHRA does not allow for individual liability for retaliation claims, therefore the Court dismisses Count IX.

## CONCLUSION

For the foregoing reasons, the Court grants Farrar and Lin's motion to dismiss, dismissing Robinson's § 1981 claim (Count V) without prejudice and Robinson's IHRA claim (Count X) with prejudice. The Court denies Bobkiewicz's motion to dismiss Counts III and IV, and the Court grants Bobkiewicz's motion to dismiss Count IX with prejudice. The Court grants Robinson leave to re-plead Count V by filing an amended complaint no later than February 1, 2017.

Dated: January 18, 2017

SARA L. ELLIS
United States District Judge