# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUZETTE ROBINSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF EVANSTON, a municipal ) <br> corporation, WALTER BOBKIEWICZ, ) <br> GRANT FARRAR, and JENNIFER LIN, ) <br> ) <br> Defendants. ) | No. 16 C 5677 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Suzette Robinson, the former Director of Public Works for the City of Evanston (the "City"), brings claims against Defendant Walter Bobkiewicz, the Evanston City Manager, and Defendants Grant Farrar and Jennifer Lin, both City employees, for their roles in discriminating and retaliating against her during her employment with the City. Robinson alleges that Farrar and Lin violated 42 U.S.C. § 1981 when they retaliated against her for filing discrimination complaints. Farrar and Lin move to dismiss the sole count against them in Robinson's second amended complaint, Count V, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Previously, in her first amended complaint [13], Robinson alleged that Farrar and Lin violated 42 U.S.C. § 1981 and the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/6-101. The Court dismissed those counts for failure to state a claim [36]. Because Robinson's second amended complaint sufficiently alleges all elements required to state a claim for § 1981 retaliation, the Court denies Farrar and Lin's motion to dismiss Count V [41].

## BACKGROUND[1]

Robinson, an African American woman, was the Director of Public Works for the City from March 2010 until August 21, 2015. While in this position, she oversaw five divisions, which employed more than 100 people, and she reported directly to Bobkiewicz, the City Manager. In May 2014, Robinson completed a performance evaluation of Bobkiewicz, and she noted her belief that Bobkiewicz treats members of the City's African American community and its African American employees poorly. Bobkiewicz learned of Robinson's comments in August 2014.

In the fall of 2014, Bobkiewicz reprimanded Robinson publicly in front of other department employees and falsely told at least two of Robinson's subordinates that Robinson was seeking to leave her position in order to undermine her authority. In response, Robinson filed a Healthy Work Environment Complaint ("HWE Complaint") against Bobkiewicz. Marty

---

[1] The facts in the background section are taken from Robinson's second amended complaint and exhibits attached thereto and are presumed true for the purpose of resolving Farrar and Lin's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* The Court may also take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

Farrar and Lin ask the Court to consider two exhibits filed with their motion to dismiss. The first exhibit [45] consists of two Illinois Department of Human Rights ("IDHR") Investigation Reports completed in response to the charges Robinson filed with the IDHR. The Court takes judicial notice of the reports because they are matters of public record. *See Morales v. Goodwill Indus. of Se. Wis., Inc.*, No. 14 CV 2370, 2014 WL 4914255, at *1 (N.D. Ill. Sept. 30, 2014) (taking judicial notice of IDHR Investigation Report because it is a matter of public record). The second exhibit [46] consists of an August 21, 2015 letter from Bobkiewicz to Robinson and an August 27, 2015 memorandum from the Assistant City Manager regarding the Public Works/Utilities Department Reorganization update. Because these two documents are central to and referenced in the second amended complaint, the Court considers them for purposes of this motion.

Lyons, Assistant City Manager, investigated the HWE Complaint and sustained three of the five complaints against Bobkiewicz. The City's Mayor subsequently issued a written reprimand to Bobkiewicz. After Robinson filed the HWE Complaint, Bobkiewicz reassigned some of Robinson's duties to other members of the staff.

During a January 2015 meeting, Bobkiewicz solicited negative comments about one of the City's African American aldermen, but did not allow Robinson to discuss issues regarding non-African American aldermen. Also in January 2015, Bobkiewicz repeated a phrase he had used previously: "we are going to make sure we have the right people in the right seats on the bus." Doc. 37 ¶ 27. Robinson believed her concerns regarding Bobkiewicz's discriminatory and retaliatory conduct were not resolved and, on March 4, 2015, she sent a written demand letter to the City describing her concerns about Bobkiewicz's disparate treatment of African American employees. Farrar, Corporation Counsel/City Attorney, responded and asked Robinson to submit a detailed settlement demand, which she did on March 30, 2015. In this demand letter, Robinson stated that if her demands were not satisfied, she would file a discrimination charge against the City. On April 14, 2015, Farrar responded on behalf of the City stating that the City would not resolve her demands unless she left her job with the City. He noted in the letter that Robinson was the subject of numerous HWE Complaints herself and threatened to try the case in the press if Robinson filed a charge. A little over a week later on April 23, 2015, Robinson, through her attorney, responded to the letter stating that she would proceed with filing her discrimination charge, and she filed a charge on April 30, 2015 with the IDHR, alleging retaliation and discrimination.

After Robinson notified Farrar that she would be filing a charge, Farrar and Lin, the Human Resources Division Manager for the City, set out to fabricate HWE Complaints against

3

Robinson. Farrar directed Lin to conduct interviews with City employees to uncover unfavorable information about Robinson. Lin conducted these interviews between April 27 and May 5, 2015. During the interviews, Lin sought only negative information about Robinson and dismissed any positive information received regarding Robinson. The interviews undermined Robinson's authority over employees who reported to her and damaged her professional reputation as a senior manager and director. Lin documented the interviews in a memorandum to Lyons and Farrar on May 8, 2015, concluding that Robinson created an unhealthy work environment. Lin's memorandum recommended that "immediate action be taken to remedy these issues." Doc. 37 ¶ 39.

On May 12, 2015, Bobkiewicz announced that Lyons and another white male city employee would conduct an examination of the Public Works and Utilities Departments and he expected that this examination would lead to the elimination of both departments. As part of this examination, Bobkiewicz changed Robinson's reporting structure and directed her to report directly to Lyons. Lyons removed Robinson's decision-making authority and ordered the employees who directly reported to Robinson to instead report to him.

On August 21, 2015, Lyons informed Robinson that her employment was terminated but did not provide her a reason for the termination. The same day, Robinson received a letter from Bobkiewicz stating that the City planned to combine the Public Works and Utilities Departments into one department named the Public Works Agency. As a result of this combination, Bobkiewicz stated that the City was eliminating Robinson's position from the City's Fiscal Year 2016 budget and terminated her employment, effective immediately. Bobkiewicz considered the information gathered during the investigation by Lin and Farrar when deciding to terminate Robinson.

On August 27, 2015, Lyons sent a memorandum to the City Council describing the proposed organizational changes to the Public Works and Utilities Departments, which was the City Council approved on September 23, 2015. Lyons and others who conducted the examination of the departments used Lin's May 2015 memorandum as a basis for ultimately recommending that Robinson not remain as an employee in the new agency.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Robinson alleges that Farrar and Lin violated § 1981 by fabricating HWE Complaints against her in retaliation for her complaints of race discrimination. To state a claim for § 1981 retaliation, Robinson must allege that she suffered a materially adverse action because she engaged in protected activity. *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016) (citing *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011); *Silverman v. Bd. of*

*Educ. of the City of Chicago*, 637 F.3d 729, 740–42 (7th Cir. 2011)) *cert. denied*, No. 16-442, 2016 WL 5816674 (U.S. Nov. 28, 2016). Farrar and Lin argue that Robinson fails to sufficiently allege a protected activity, an adverse action, and causation. They further assert that Robinson has failed to allege facts sufficient to establish personal liability for § 1981 retaliation. Farrar and Lin also argue that even if Robinson has sufficiently stated a claim against them, they are entitled to qualified immunity.

**I.      Individual Liability for § 1981**

Farrar and Lin argue that Robinson has failed to sufficiently allege a claim for individual liability for retaliation under § 1981. Individuals may be held liable under § 1981 if they participated in the retaliatory conduct. *Shott*, 829 F.3d at 497 (citing *Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015)). Personal liability may exist where the conduct occurred at the individual's direction or with his knowledge and consent. *Harris v. Illinois*, No. 09 C 3071, 2014 WL 2766737, at *16 (N.D. Ill. June 18, 2014).

Farrar and Lin argue that Robinson "has not attributed a retaliatory motive to either Farrar or Lin" and therefore cannot proceed on a claim for individual liability. Doc. 44 at 6. However, Robinson alleges in her second amended complaint that "Farrar and Lin fabricated healthy work environment complaints against Robinson in retaliation for her complaints of race discrimination." Doc. 37 ¶ 81. Robinson claims that after she "advised that she would proceed with filing an IDHR Charge, and undoubtedly recognizing that Farrar's contention that Robinson had been the subject of 'many' healthy work environment complaints was unsubstantiated, the City, Farrar, and Lin set out to fabricate healthy work environment complaints against her." *Id.* ¶ 35. Contrary to Farrar and Lin's argument, Robinson does allege that Farrar and Lin acted with a retaliatory motive.

6

Farrar and Lin also argue that Lin cannot be liable for retaliation because, according to the allegations, Robinson's March and April 2015 letters were sent to Farrar; thus, Lin was not aware of Robinson's protected activity. Farrar and Lin further assert that Farrar cannot be held liable for retaliation because, according to the allegations, Farrar did not participate in the employee interviews, which were conducted by Lin, or create the subsequent memorandum, which was written by Lin. Robinson responds to this argument by asserting that a fair reading of her allegations, and the reasonable inferences arising from them, establishes that Lin knew Robinson intended to file an IDHR charge and Farrar participated in the retaliatory activity.

As noted above, the second amended complaint alleges that "[a]fter Robinson advised that she would proceed with filing an IDHR Charge, and undoubtedly recognizing that Farrar's contention that Robinson had been the subject of 'many' healthy work environment complaints was unsubstantiated, the City, Farrar, and Lin set out to fabricate health work environment complaints against her." Doc. 37 ¶ 35. The complaint further alleges that Lin interviewed multiple employees "to dig up dirt on Robinson" "at Farrar's direction" and that "Farrar and Lin fabricated healthy work environment complaints against Robinson in retaliation for her complaints of race discrimination." *Id.* ¶¶ 36, 81.

When considering a motion to dismiss, the Court must draw all reasonable inferences from alleged facts in the plaintiff's favor. *AnchorBank, FSB*, 649 F.3d at 614. To survive a motion to dismiss, "specific facts are unnecessary, but the complaint must give the defendant fair notice of what the claim is and the grounds upon which its rests." *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 832 (7th Cir. 2015) (citing *Olson v. Champaign County*, 784 F.3d 1093, 1098 (7th Cir. 2015)). The Court finds that it is reasonable to infer from the factual allegations in Robinson's second amended complaint that Lin knew of

Robinson's intention to file an IDHR charge and Farrar participated in the alleged retaliatory activity. Although Robinson does not explicitly state these particular facts, the complaint nevertheless gives Farrar and Lin adequate notice of Robinson's claims. Farrar and Lin argue that this reading of the complaint "stretches the applicable standard of review beyond its limits" because Robinson's "hypothesis is not consistent with the allegations in her Complaint." Doc. 53 at 5. The Court disagrees and finds that Lin's knowledge of Robinson's intention to file an IDHR charge and Farrar's participation in the retaliatory activity is entirely consistent with the complaint's allegations. The complaint alleges facts that are sufficient to state a claim for personal liability under § 1981.

## II.  Protected Activity

Farrar and Lin further argue that Robinson has not sufficiently alleged that she engaged in protected activity. In its previous Opinion and Order, the Court found that Robinson had alleged protected activity in her first amended complaint. *See* Doc. 36 at 7. Specifically, the Court found that Robinson's March 4, 2015 demand letter, her March 30, 2015 written settlement demand, and her April 23, 2015 letter to Farrar each constituted protected activity. *Id.* Robinson's second amended complaint contains identical allegations regarding these three protected activities. However, Farrar and Lin now argue that Robinson's allegations are insufficient to show protected activity because she has failed to demonstrate that her oppositional activity was exercised in a reasonable manner and was based on a reasonable, good faith belief. Farrar and Lin point to the IDHR Investigation Reports to support their claims and argue that the conduct Robinson opposed failed to rise to the level of actionable race discrimination.

To establish that she engaged in protected activity, a plaintiff need only show that she had "a reasonable, good-faith belief" that certain conduct was discriminatory when she opposed or

8

complained about it and need not prove that it was actually discriminatory. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 674 (7th Cir. 2011). In other words, her complaint of discriminatory conduct cannot be "utterly baseless." *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 891 (7th Cir. 2004). Furthermore, "[p]rotection is not lost simply because an employee is mistaken on the merits of his or her charge." *Id.* at 892. Whether the plaintiff was successful in her complaint regarding the discrimination is immaterial. *Henson v. Canon Bus. Sols., Inc.*, 69 F. Supp. 3d 730, 737 (N.D. Ill. 2014). The objective reasonableness of the belief is determined by examining whether the conduct "falls into the category of conduct prohibited by the statute." *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008). Whether a plaintiff has a "sincere and reasonable belief" that she was opposing an unlawful practice at the time of her complaint is "a question best addressed at the close of discovery, when the factual record has been more fully developed." *Kirley v. Bd. of Educ. Of Me. Twp. High Sch. Dist. 207*, No. 13 C 1706, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 20, 2013).

The Court finds that Robinson has alleged facts sufficient to show, at this stage of the case, that her complaints in March and April 2015 were not baseless and instead, based on a reasonable, good-faith belief that the conduct of which she complained was discriminatory and unlawful. Race discrimination and retaliation clearly fall into the category of conduct prohibited by § 1981. *See Nehan v. Tootsie Roll Indus., Inc.*, 621 F. App'x 847, 850 (7th Cir. 2015) ("Section 1981 prohibits racial discrimination and retaliation against employees when a contractual relationship exists between the employer and employee."). Robinson has sufficiently pleaded the protected activity element required for a § 1981 claim.

**III.    Adverse Action**

Farrar and Lin also argue that Robinson has failed to allege an adverse employment action.  In its previous Opinion and Order granting Farrar and Lin's motion to dismiss Robinson's § 1981 claim, the Court ruled that Robinson had failed to plead an adverse action. *See* Doc. 36 at 8.  The Court held that the investigation by Farrar and Lin and their alleged fabrication of HWE Complaints, standing alone, could not constitute a materially adverse action. *Id.* at 7.  However, the Court noted that Robinson could remedy the deficiency with allegations that the HWE Complaints caused some tangible adverse consequence. *Id.* at 8.

In the context of a § 1981 retaliation claim, a materially adverse action is an action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Shott*, 829 F.3d at 497 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).  The action does not need to be directly related to the plaintiff's employment. *Id.*  A negative review or employment complaint, even when false, is not materially adverse without some negative consequence resulting from the complaint. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108–09 (7th Cir. 2012) (holding that because a negative review did not have any actual consequences for plaintiff it was not materially adverse); *Martinez v. Nw. Univ.*, 173 F. Supp. 3d 777, 788 (N.D. Ill. 2016) (holding that filing false accusations regarding plaintiff's behavior and making false allegations about the plaintiff's compliance with department policies were not materially adverse employment actions where there were no material consequences).  However, allegations that a performance review or employment complaint negatively affected the plaintiff's compensation, career prospects, or conditions of employment can be sufficient to allege the adverse action required for a retaliation claim. *See Ware v. Lake County Sheriff's*

*Office*, No. 15 C 9379, 2017 WL 914755, at *8 (N.D. Ill. Mar. 8, 2017) (denying motion to dismiss for failure to allege a materially adverse action because plaintiff's allegations that a performance review negatively affected his promotion and earning capacity were sufficient to allege a materially adverse action).

Robinson's second amended complaint alleges several negative consequences resulting from Farrar and Lin's investigation and fabricated HWE Complaints. Specifically, Robinson alleges that the investigation "had the effect of undermining Robinson's authority over employees who reported either directly or indirectly to her and damaged Robinson's professional reputation as a senior manager and Department Director for the City." Doc. 37 ¶ 37. Robinson also claims that, in addition to concluding that Robinson created an unhealthy work environment, the memorandum drafted by Lin after her investigation recommended that "immediate action be taken to remedy these issues." *Id.* ¶ 40. Shortly after Lin submitted this memorandum to Lyons, Lyons allegedly stripped Robinson of all her decision-making authority and advised Robinson's direct reports to report to him.[2] *Id.* ¶ 45. In addition, Robinson alleges that, on information and belief, Lyons and others used Lin's memorandum "as a basis for ultimately recommending that Robinson not remain as an employee" of the new Public Works Agency. *Id.* ¶ 52. Robinson

---

[2] Farrar and Lin argue that Robinson's claims regarding Lyons' actions are "new allegations" that cannot be considered. Doc. 53 at 7. However, the actions Lyons took after he received Lin's memorandum are alleged in the second amended complaint. Therefore, Robinson's argument that these actions were some of the negative consequences resulting from the investigation and fabricated HWE Complaints is supported by the allegations in her complaint, without relying upon new allegations. The Court is also unconvinced by Farrar and Lin's argument that Robinson's allegations regarding Lyons' conduct are inconsistent with her complaint. The allegation in Robinson's complaint that Lyons stripped Robinson of her authority "at Bobkiewicz's direction," Doc. 37 ¶ 45, does not indicate that Lyons' conduct could not have been a consequence of the fabricated HWE Complaints. Nowhere does Robinson allege, as Farrar and Lin claim, that Lin's memorandum was shared "only with Lyons and Farrar, to the exclusion of Bobkiewicz." Doc. 53 at 7. Rather, it is reasonable to infer that a memorandum addressed to Lyons, as Assistant City Manager, and Farrar, as City Attorney, recommending "immediate action" regarding an unhealthy work environment would have been shared with Bobkiewicz, the City Manager.

further alleges that, on information and belief, Bobkiewicz took into account the information gathered during the investigation when deciding to terminate Robinson. *Id.* ¶ 61.

These facts are sufficient to plead the materially adverse action required for a § 1981 retaliation claim. They show that Farrar and Lin's investigation and fabrication of HWE Complaints had significant negative and harmful consequences that would dissuade a reasonable employee from making a complaint of discrimination. *See Ware*, 2017 WL 914755, at *8.

## IV. Causation

Farrar and Lin argue that Robinson's second amended complaint fails to sufficiently allege the but-for causation required to state a claim for § 1981 retaliation. In its previous Opinion and Order, the Court held that although suspicious timing alone does not always satisfy the causation element of a § 1981 claim, retaliatory conduct that "comes 'on the heels' of the protected activity" is often sufficient to show causation. *See* Doc. 36 at 8 (citing *Hosick v. Chicago State Univ. Bd. Of Trs.*, 924 F. Supp. 2d 956, 976 (N.D. Ill. 2013)).

Robinson alleges that she advised Farrar on April 23, 2015 that she would be filing a charge of discrimination and after that notification, "the City, Farrar, and Lin set out to fabricate healthy work environment complaints against her." Doc. 37 ¶¶ 32, 35. Robinson alleges that, beginning on April 27, 2015, "[o]n information and belief, at Farrar's direction, Lin undertook to interview multiple employees to dig up dirt on Robinson." *Id.* ¶ 36. This short passage of time between Robinson's protected activity on April 23 and the retaliatory activity on April 27 is sufficient, at this stage of the case, to allege a causal connection. *See* Doc. 36 at 8 (finding sufficient allegations of a causal connection in the first amended complaint).

## V. Cat's Paw Liability

Robinson argues in her response to the motion to dismiss that her second amended complaint also alleges facts to support a "cat's paw" theory of liability against Farrar and Lin for Robinson's ultimate termination from the City. Doc. 52 at 6. Cat's paw liability applies where an employee with discriminatory or retaliatory animus "provided factual information or other input that may have affected the adverse employment action." *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012). The theory can be used to impose entity liability against an employer[3] or individual liability against the "subordinate employee who intentionally causes a decision-maker to take adverse action against another employee in retaliation for statutorily protected activity." *Id.* at 899. Cat's paw liability requires that the subordinate employee's actions were "a causal factor" in the adverse action. *Id.* at 900.

Farrar and Lin argue that Seventh Circuit precedent does not permit Robinson to use the cat's paw theory of liability to hold Lin liable for Farrar's retaliatory motive, or to hold Farrar liable for Lin's retaliatory conduct. However, the Court interprets Robinson's claim of cat's paw liability as one in which the retaliatory motives and actions of both Farrar and Lin caused another decision-maker, such as Bobkiewicz, to take the adverse action of termination against Robinson. Under *Smith*, Farrar and Lin can be held liable as the "subordinate employee[s] who intentionally cause[d] a decision-maker to take adverse action against another employee in retaliation" for

---

[3] The Seventh Circuit has indicated that cat's paw liability may not be available to establish municipal liability when the retaliatory subordinate is not a policy-maker. *Smith*, 681 F.3d at 899 ("[A] cat's paw theory will support entity liability for retaliation under Title VII, § 1981, and § 1983, except perhaps when the defendant is a municipal corporation and the biased or retaliatory subordinate is not a policy-maker."); *Simstad v. Scheub*, 816 F.3d 893, 902 (7th Cir. 2016) ("We have wondered whether the cat's-paw theory can support entity liability under the civil rights laws when the entity is a municipal corporation and the biased or retaliatory subordinate is not a policy-maker."). However, Robinson has only alleged that Bobkiewicz was the policy-making official during the relevant time period. As a result, Robinson's cat's paw theory that Farrar and Lin provided the factual information that caused her termination may not be sufficient to establish municipal liability against the City.

protected activity. *Smith*, 681 F.3d at 899. To succeed under this theory, Robinson will ultimately have to prove that Farrar and Lin's actions were a "causal factor" in the termination decision and that Farrar and Lin caused the termination because Robinson complained about discrimination. *See Smith*, 681 F.3d at 900 (stating that "[t]he key question is whether the non-decision-maker's actions were a 'causal factor,' based on common-law proximate cause principles, in the termination decision" and holding that, at the summary judgment stage, the plaintiff had to present enough admissible evidence showing that the defendant caused plaintiff's termination because plaintiff complained about discrimination). Robinson has alleged sufficient facts to support both of these requirements.[4] Robinson has alleged that Farrar and Lin's retaliatory investigation and fabricated HWE Complaints were a causal factor in her termination. In her second amended complaint, she alleges that Lyons and others conducting the examination of the Public Works and Utilities Department used Lin's memorandum as a basis for recommending that Robinson not remain an employee of the City. She also alleges that Bobkiewicz took into account the information gathered during Farrar and Lin's investigation when deciding to terminate Robinson.[5] As stated above in Section IV, Robinson has also sufficiently alleged that Farrar and Lin's retaliatory conduct was caused by her protected activity. *See* Section IV. Robinson, therefore, has stated a § 1981 retaliation claim for her termination against Farrar and Lin based on a cat's paw theory of liability.

---

[4] Robinson is not required to prove each required element of her claims to survive a motion to dismiss. *See Vega v. Chicago Park Dist.*, 958 F. Supp. 2d 943, 955 (N.D. Ill. 2013) (holding that plaintiff "is not required to prove a prima facie retaliation claim" to survive a motion to dismiss, she "must only plead facts to create an inference of a plausible claim").

[5] Farrar and Lin argue that Robinson's termination cannot be connected to Farrar and Lin's conduct because Lyons' August 27, 2015 memorandum and Bobkiewicz's August 21, 2015 letter do not reference Farrar and Lin's investigation or the May 2015 memorandum resulting from that investigation. The Court is not convinced by this argument. The fact that neither document explicitly references Farrar and Lin's investigation does not mean that Robinson has failed to sufficiently allege that the investigation was a causal factor in her termination.

## VI. Qualified Immunity

Finally, Farrar and Lin argue that the Court should dismiss Robinson's claim against them because they are entitled to qualified immunity. Public officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008). To determine whether a defendant is entitled to qualified immunity, the Court must consider the facts alleged in the light most favorable to the plaintiff and determine (1) whether the facts show that the defendant's conduct violated a constitutional right and (2) whether the right was clearly established. *Id.* Farrar and Lin assert that because Robinson has failed to satisfy her pleading burden with respect to each of the required elements for § 1981 retaliation, she fails to describe a violation of a protected right. As set forth above, the Court finds that Robinson sufficiently alleges a violation of her right to be free from retaliation under § 1981. Furthermore, this right was clearly established at the time Farrar and Lin engaged in the alleged conduct. *See Smith*, 681 F.3d at 896 (acknowledging that the "Supreme Court has held that § 1981 authorizes claims for retaliation" and holding that "unlawful retaliation occurs when an employee takes an adverse employment action against an employee for opposing impermissible discrimination"). Reasonable actors would have known that the retaliatory actions taken by Farrar and Lin are unlawful. Farrar and Lin, therefore, are not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court denies Farrar and Lin's motion to dismiss [41]. The Court orders Farrar and Lin to answer the allegations in Robinson's complaint by June 20, 2017.

Dated: June 5, 2017

_____
SARA L. ELLIS
United States District Judge